## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Irvin Morales

    v.                              Case No. 17-cv-234-SM

Joseph Foster, William Wrenn, Christopher Kench, Colon Forbes, Richard Gerry, Jean Carrol, Jon Fouts, Roderick Greenwood, Keith Forcier, Kelly Jardine, John Doe 1, John Doe 2, John Doe 3, and Jane Doe 1

### REPORT AND RECOMMENDATION

Before the court for preliminary review, pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1), is plaintiff Irvin Morales's Second Amended Complaint (Doc. No. 27), the operative complaint, superseding Morales's original complaint (Doc. No. 1), his handwritten "Amended Civil Rights Complaint" (Doc. No. 19), and his typed "Amended Civil Rights Complaint" (Doc. No. 24). This Report and Recommendation ("R&R") replaces the March 27, 2018 R&R (Doc. No. 10), relating to Morales's original complaint. A separate order issued along with this R&R has withdrawn the March 27, 2018 R&R.

### Preliminary Review Standard

The court may dismiss claims asserted in an inmate's complaint if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails

to state a claim, or the action is frivolous or malicious.  See 28 U.S.C. § 1915A(b).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court treats as true all well-pleaded factual allegations and construes reasonable inferences in the plaintiff's favor, in deciding if the pleading states a claim upon which relief can be granted.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Dismissing an action on the basis of an "immunity" defense under 28 U.S.C. § 1915A(b)(2), prior to service of the complaint, is permissible if the facts alleged in the complaint, or matters of which the court can take judicial notice, conclusively establish the elements of that defense.  See Story v. Foote, 782 F.3d 968, 970 (8th Cir. 2015) (affirming dismissal as "the defense of qualified immunity is established on the face of the complaint").  Cf. Gray v. Evercore Restructuring LLC, 544 F.3d 320, 324 (1st Cir. 2008) ("Where a court grants a Rule 12(b)(6) or Rule 12(c) motion based on an affirmative defense, the facts establishing that defense must: (1) be 'definitively ascertainable from the complaint and other allowable sources of

2

information,' and (2) 'suffice to establish the affirmative defense with certitude.'").

## Background

This case arises out of a December 2014 group strip search at the New Hampshire State Prison ("NHSP"). The search followed a holiday party attended by approximately one hundred inmates and their families. Morales, who attended the entire event, alleges that about half of the inmates left the event early. The inmates who left early, Morales claims, were subjected to a fully-clothed pat-down search upon leaving. After the event ended and the families left, a "cadet" corrections officer ("CO") identified in the Amended Complaint as "John Doe 3," Am. Compl. ¶ 16 (Doc. No. 27), at 7, announced to all of the remaining inmates, including Morales, that they would be subjected to a strip search, under orders of NHSP Maj. Jon Fouts, Sgt. Keith Forcier, and Capt. Roderick Greenwood.[1] Morales further alleges that an unnamed officer, who Morales identifies as "CO John Doe 1," was one of the COs who ordered and conducted the strip search. Second Am. Compl. ¶¶ 15, 58, 67

---

[1]Morales previously identified the CO who announced the strip search as "John Doe 2." In the second amended complaint, Morales renames the CO he believes "'announced to the entire gym that the search would commence'" as John Doe 3. See Second Am. Compl. (Doc. No. 27), at 7, ¶ 16 (quoting Defs.' Notice Regarding Identity of "John Doe 2" (Doc. No. 16), at 2)).

(Doc. No. 27), 7, 11-12.

Morales asserts that two of the inmates at the party were given the opportunity to be strip-searched in a bathroom off the gymnasium. The remaining inmates were compelled to strip, bend over, lift their testicles, spread their buttocks, and cough in groups of eight in the center of the gymnasium, without privacy screens. The searches occurred in the presence of other male inmates and a number of COs, including one female CO, defendant Kelly Jardine, who Morales asserts "gawked" at the inmates being searched from her position above the gymnasium floor, some distance away.[2]  Id. at 8, ¶¶ 22-28. The search occurred beneath a video surveillance camera that Morales asserts, "on information and belief," was monitored by a female CO he identifies as "Jane Doe 1." Id. at 8, ¶ 29.

Upon being directed to submit to the strip search, Morales and other inmates verbally protested, stating that the search would violate their rights. Morales asserts that "John Doe 2," a "cadet" CO near him, responded by threatening to issue Morales

---

[2]Morales signed a declaration under penalty of perjury that is part of the record in another case in this court, Beers v. Fouts, No. 15-cv-454-SM (D.N.H.), which was filed by Timothy Beers, another inmate who was strip-searched at the same event. See Decl. of Irvin Morales, Beers v. Fouts, No. 15-cv-454-SM (D.N.H., decl. filed Dec. 22, 2016) (ECF No. 45-1).  In that filing, Morales averred that a female CO, identified in that case as Kelly Jardine, watched the search from the "top of the stairs" above the gym.  Id.

4

a disciplinary ticket if he did not comply, and by saying that
the more Morales protested, the longer his search would take.
See id. at 7-9, ¶¶ 15, 34, 36.  Morales asserts that CO John Doe
2 then subjected Morales to an excessively "long, slow and
humiliating search."  Id. at 9, ¶ 38.

Morales further asserts that his "devout catholic"
religious beliefs, id. at 12, ¶ 63, forbid him from baring his
body to people to whom he is not married.  Morales claims that
the December 2014 group strip search required him to act in a
manner contrary to his religious beliefs.

Two NHSP inmates, in addition to Morales, filed lawsuits in
this court claiming that the December 2014 holiday party group
strip search violated their federal rights, naming similar
defendants and alleging similar facts.  See Beers v. Fouts, No.
15-cv-454-SM (D.N.H.); Baptiste v. Foster, No. 16-cv-439-JD
(D.N.H.).  Unlike Morales, however, the plaintiffs in Baptiste
and Beers did not include any allegations about: cadet CO John
Doe 2 engaging in retaliation, CO Jane Doe 1 monitoring the
surveillance camera, or the early departure and pat-down search
of any inmates.  The analogous claims in Beers and Baptiste were
resolved in the defendants' favor.  See, e.g., Mar. 30, 2017
Order, Baptiste v. N.H. Att'y Gen'l, No. 16-cv-439-JD, 2017 U.S.
Dist. LEXIS 49496, 2017 WL 1207505 (D.N.H. Mar. 30, 2017) (ECF
No. 11) ("Baptiste I") (complaint fails to state claim under

Eighth Amendment); May 25, 2017 Order, Baptiste v. Foster, 2017
DNH 098, 2017 U.S. Dist. LEXIS 80241, 2017 WL 2303975 (D.N.H.
May 25, 2017) (ECF No. 15) ("Baptiste II") (Fourth Amendment
claim is barred by qualified immunity); July 17, 2017 Order,
Baptiste v. MacDonald, 2017 DNH 140, 2017 U.S. Dist. LEXIS
110172, 2017 WL 3034254 (D.N.H. July 17, 2017) (ECF No. 22)
("Baptiste III") (same).  See also Feb. 2, 2016 Order, Beers v.
N.H. Governor, No. 15-cv-454-SM, 2016 U.S. Dist. LEXIS 12075,
2016 WL 409695 (D.N.H. Feb. 2, 2016) (ECF No. 13) ("Beers I")
(complaint fails to state claim under Eighth Amendment); Sept.
12, 2017 Order, Beers v. Fouts, No. 15-cv-454-SM, 2017 U.S.
Dist. LEXIS 147077, 2017 WL 4041316 (D.N.H. Sept. 12, 2017) (ECF
No. 92) ("Beers II") (Fourth Amendment claim is barred by
qualified immunity); March 7, 2018 Order, Beers v. Fouts, 2018
DNH 045, 2018 U.S. Dist. LEXIS 37911, 2018 WL 1221157 (D.N.H.
Mar. 7, 2018) (ECF No. 102) ("Beers III") (same); July 10, 2018
Order, Beers v. Fouts, 2018 DNH 144, 2018 U.S. Dist. LEXIS
114202, 2018 WL 3370628 (D.N.H. July 10, 2018) (ECF No. 114)
("Beers IV") (First Amendment free exercise claim is barred by
qualified immunity and for failure to state a claim upon which
relief can be granted).[3]

---

[3]The plaintiff in Beers appealed the adverse orders in that
case, and that appeal remains pending.  See Beers v. Fouts, No.
18-1392 (1st Cir., filed Apr. 18, 2018).  The plaintiff in
Baptiste did not appeal.

## Claims

Seeking declaratory and injunctive relief against
defendants in their official capacities and damages against
defendants in their individual capacities, Morales asserts the
following claims under 42 U.S.C. § 1983 and state law:

1.   In making Morales the object of an excessively long,
slow, and humiliating search after Morales protested that
the search would violate his rights, CO John Doe 2:

   a.   Violated Morales's Fourth Amendment right not to
   be subjected to an unreasonable search, lacking any
   legitimate purpose;

   b.   Violated Morales's Eighth Amendment right not to
   be subjected to cruel and unusual punishment; and

   c.   Violated Morales's right to avoid retaliation for
   engaging in conduct protected by the First Amendment.

2.   Defendant COs Jane Doe 1, John Doe 1, Kelly Jardine,
and John Doe 3; Maj. Jon Fouts; Capt. Roderick Greenwood;
and Sgt. Keith Forcier, in causing Morales to be strip-
searched without privacy screens in the presence of other
male inmates and COs, including a female CO, in view of a
surveillance camera monitored by a female CO, violated
Morales' rights under

   a.   the Fourth Amendment, and

   b.   the Eighth Amendment.

3.   COs Jardine, Jane Doe 1, and John Does 1, 2, and 3;
Capt. Greenwood; Sgt. Forcier; and Maj. Fouts violated
Morales's First Amendment right to the free exercise of
religion, in that they required Morales to perform acts
forbidden by his religion.

4.   COs Jane Doe 1, John Does 1-3, and Jardine; Capt.
Greenwood; Sgt. Forcier; and Maj. Fouts violated Morales's
Fourteenth Amendment right to equal protection by
subjecting only inmates like Morales who stayed until the
end of the holiday event to a strip-search, while allowing

inmates who left the event early to be searched by being patted-down while wearing clothes.

5.   Colon Forbes and Jean Carrol caused or failed to prevent the destruction of the surveillance camera video, amounting to the spoliation of evidence.

## **Discussion**

I.   Fourth Amendment Unreasonable Search (Claims 1(a), 2(a))

A.   Standard

The Fourth Amendment prohibits unreasonable searches.   In evaluating whether a strip search is reasonable, courts apply a test that requires:

> "balancing of the need for the particular search against the invasion of personal rights that the search entails." Factors to be weighed are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

Wood v. Hancock Cty. Sheriff's Dep't, 354 F.3d 57, 67 (1st Cir. 2003) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).   A search undertaken pursuant to a prison regulation impinging on an inmate's Fourth Amendment rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 326 (2012) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).   Where there are allegations that a strip search was undertaken as a pretext for retaliatory conduct, as punishment, or for sexual humiliation, a Fourth Amendment claim challenging a strip search

8

may be viable.  See Swain v. Spinney, 117 F.3d 1, 8 (1st Cir. 1997).

### B.  John Doe 2 (Claim 1(a))

Morales's Fourth Amendment unreasonable search claim asserted against John Doe 2, identified here as Claim 1(a), survives preliminary review.  In the Order issued this date, the court has directed service of the Second Amended Complaint upon CO John Doe 2.

### C.  Qualified Immunity of Remaining Officers (Claim 2(a))

As to the remaining defendants, however, the court declines to direct service of a Fourth Amendment claim.  For reasons explained below, there is well-reasoned precedent dismissing on grounds of qualified immunity, essentially the same claims asserted against substantially the same set of defendants by two other NHSP inmates challenging the validity of the same December 2014 strip search, and there are no facts or factual allegations warranting a different result in this case as to Claim 2(a).

Qualified immunity may provide grounds for a district court to dismiss a prisoner complaint under 28 U.S.C. § 1915A.  See Story, 782 F.3d at 970.  When qualified immunity is invoked, the burden is on the plaintiff to show the inapplicability of the defense.  See Rivera-Corraliza v. Puig-Morales, 794 F.3d 208,

215 (1st Cir. 2015).

In determining whether a defendant has qualified immunity "[o]n the basis of the pleadings," the court "must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 8 (1st Cir. 2013) (citations and internal quotation marks omitted).  The "relevant, dispositive inquiry" in determining whether a right is "clearly established" is "whether it would be clear to a reasonable [officer] that his conduct was unlawful in the situation he confronted." Id. at 9 (emphasis, citations, and internal quotation marks omitted).

To show that the right was "clearly established,"

> the plaintiff must point to controlling authority or a consensus of cases of persuasive authority that broadcasts a clear signal to a reasonable official that certain conduct falls short of the constitutional norm.

McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017) (internal quotation marks and citations omitted), cert. denied, 138 S. Ct. 1311 (2018).

"'[C]learly established law' should not be defined 'at a high level of generality.' . . . [T]he clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (citation omitted).  The

standard does not require a case on point but does require "a case where an officer acting under similar circumstances" as the defendant was "held to have violated" the pertinent federal right.  Id.

Morales has alleged the group strip search ordered by John Doe 3 and the supervisors named in Claim 2(a) violated his Fourth Amendment right not to be subjected to an unreasonable search.  In Beers and Baptiste, the district court considered similar Fourth Amendment claims concerning the circumstances known to essentially the same officers involved in the same group strip search, and concluded that those defendants were entitled to qualified immunity, as it would not have been clear to a reasonable officer in December 2014 that it was unlawful to subject a prisoner to a "visual body cavity search" in a group setting in a prison following a large group contact visit, viewed at a distance by a female CO.  The Fourth Amendment unreasonable search claims asserted by Morales against the defendant corrections officers and their supervisors, identified here as Claim 2(a), rest on allegations that are the same in all relevant respects as those asserted in support of the Fourth Amendment claims in Beers and Baptiste.  The allegations unique to Morales's Second Amended Complaint, that cadet CO John Doe 2 subjected Morales to an excessively slow and humiliating search because of Morales's verbal protest; and that CO Jane Doe 1, "on

11

information and belief," monitored the feed from a surveillance
camera recording the search, do not substantially alter the
outcome of the qualified immunity inquiry as to the defendants
named in Claim 2(a).  None of the COs or supervisory officer
named as defendants in Claim 2(a) is alleged to have
specifically authorized or been aware of the particularly slow
and allegedly retaliatory and humiliating manner in which CO
John Doe 2 conducted Morales's search.  Moreover, CO Jane Doe
1's alleged monitoring of the surveillance camera video is not
alleged to have differed from the type of cross-gender viewing
from a distance that the plaintiffs in Beers and Baptiste
alleged as to Jardine, which did not defeat the qualified
immunity defense there.  See Beers II (ECF No. 92) (approving
June 12, 2017 R&R, Beers v. Fouts, No. 15-cv-454-SM, 2017 U.S.
Dist. LEXIS 147378, 2017 WL 4048283 (D.N.H. June 12, 2017) (ECF
No. 82)); Baptiste II (ECF No. 15).  As the pertinent
allegations and defendants named in Claim 2(a) in Morales's
Second Amended Complaint are essentially the same as those in
Beers and Baptiste with respect to defendants Fouts, Greenwood,
Forcier, Jardine, Jane Doe 1, and John Does 1 and 3 here, the
reasons for finding qualified immunity as to the Fourth
Amendment claims in Beers and Baptiste apply equally to Claim
2(a) in Morales's Second Amended Complaint.  Therefore, Claim
2(a) should be dismissed as barred by qualified immunity.

II.   Eighth Amendment Humiliation (Claims 1(b), 2(b))

    A.   Standard

    The Eighth Amendment "prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's necessities.'"  Brown v. Plata, 131 S. Ct. 1910, 1959 (2011) (citation omitted).  An Eighth Amendment claim challenging the conditions of a prisoner's confinement has an objective and subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  To satisfy the objective component of a prison conditions claim, the deprivations alleged must be "extreme." Hudson v. McMillian, 503 U.S. 1, 9 (1992).  To satisfy the subjective component, "a prison official must have a 'sufficiently culpable state of mind.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted).  "The guard or warden must want to injure the prisoner or must know of and disregard a substantial risk that harm will befall the prisoner."  Johnson v. Phelan, 69 F.3d 144, 149 (7th Cir. 1995).

    "A prisoner states a claim under the Eighth Amendment when he plausibly alleges that the strip-search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons."  King v. McCarty, 781 F.3d 889, 897 (7th Cir. 2015); see also Logan v. Maine State Prison, No. 1:17-CV-

13

00360-GZS, 2017 WL 6055381, at *2, 2017 U.S. Dist. LEXIS 201409 (D. Me. Dec. 7, 2017), R&R adopted, No. 1:17-CV-00360-GZS, 2018 WL 283242, 2018 U.S. Dist. LEXIS 889 (D. Me. Jan. 3, 2018). "Even where prison authorities are able to identify a valid correctional justification for the search, it may still violate the Eighth Amendment if 'conducted in a harassing manner intended to humiliate and cause psychological pain.'" King, 781 F.3d at 897. "In short, where there is no legitimate reason for the challenged strip-search or the manner in which it was conducted, the search may 'involve the unnecessary and wanton infliction of pain' in violation of the Eighth Amendment." Id. (emphasis added).

B.    John Doe 2 (Claim 1(b))

The allegations as to the search of Morales performed by CO John Doe 2, including John Doe 2's retaliatory intent and the manner in which the search was performed, are sufficient to survive preliminary review of Morales's Eighth Amendment claim against that officer (Claim 1(b)). In the Order issued this date, the court has directed service of Claim 1(b) on CO John Doe 2.

C.    Remaining Defendants (Claim 2(b))

As to the remaining defendants, Morales has not alleged

14

sufficient facts to state a claim of an Eighth Amendment
violation.  In causing Morales to be subjected to the group
strip search, as alleged by Morales and in <u>Beers</u> and <u>Baptiste</u>,
the defendants named in Claim 2(b) are not alleged to have been
aware of or deliberately indifferent to any substantial risk of
serious harm to Morales presented by those search conditions, or
to have been aware of the particularly slow and humiliating
manner in which CO John Doe 2 conducted the search of Morales.
Nor are any defendants named in this case, other than CO John
Doe 2, alleged to have intended to subject Morales to the type
of slow and humiliating search methods that defendant employed
in searching Morales.  Accordingly, the Eighth Amendment claim
against defendants Fouts, Greenwood, Forcier, John Does 1 and 3,
Jardine, and Jane Doe 1 should be dismissed for failure to state
a claim upon which relief can be granted.  <u>See</u> <u>Beers I</u> (ECF No.
<u>13</u> (approving Dec. 14, 2015 R&R, <u>Beers v. Hassan</u>, No. 15-cv-454-
SM, 2015 U.S. Dist. LEXIS 175679, 2015 WL 9948259 (D.N.H. Dec.
14, 2015) (ECF No. <u>7</u>)); <u>Baptiste I</u> (ECF No. <u>11</u>) (approving Mar.
13, 2017 R&R, <u>Baptiste v. N.H. AG</u>, No. 16-cv-439-JD, 2017 U.S.
Dist. LEXIS 49498, 2017 WL 1207878 (D.N.H. Mar. 13, 2017) (ECF
No. <u>8</u>)).


III. <u>First Amendment Retaliation (Claim 1(c))</u>

     Claim 1(c) summarizes Morales's allegations that CO John

15

Doe 2 responded to Morales's verbal protests by threatening to issue a disciplinary ticket for noncompliance and then subjecting Morales to an excessively slow, humiliating search. To state a First Amendment retaliation claim, an inmate must allege: (1) that the conduct which led to the retaliation was protected by the First Amendment; (2) that she or he suffered adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of her or his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  Although de minimis reactions to protected speech are not actionable, an adverse act taken in response to protected conduct is not de minimis if it would deter an individual of ordinary firmness from exercising his or her First Amendment rights.  See Starr v. Dube, 334 F. App'x 341, 342-43 (1st Cir. 2009).

Morales's allegations about CO John Doe 2's threat of disciplinary action, without more, does not allege more than a de minimis adverse action, which would not deter an inmate of ordinary firmness from exercising his First Amendment rights. Such an allegation fails to state a claim upon which relief can be granted, and for that reason, to the extent Morales alleges retaliation based on that allegation alone, the claim does not survive this court's preliminary review.

The allegations regarding the slow and humiliating manner

16

in which CO John Doe 2 conducted the search, however, alleges adverse action that could deter an inmate of ordinary firmness from engaging in First Amendment activity.  In the Order issued this date, therefore, the court has directed service of Claim 1(c) upon CO John Doe 2, to the extent the claim rests on the manner in which he searched Morales and his intent or motive.

IV.  First Amendment Free Exercise Claim (Claim 3)

The facts underlying Morales's First Amendment free exercise claim in this case (Claim 3) are essentially indistinguishable from those in Beers.  The court in Beers concluded that qualified immunity barred the First Amendment free exercise claim asserted against the substantially overlapping set of defendants in that case.  That court's qualified immunity determination rested upon its finding that it would not have been clear to a reasonable officer in December 2014 that it would violate the First Amendment free exercise rights of a prisoner to order him to submit to a strip search under the circumstances surrounding the December 2014 holiday party search.  See Beers IV (ECF No. 114).  Nothing alleged in Morales's Second Amended Complaint warrants a different result on preliminary review of Morales's First Amendment religious freedom claim.  The reasoning supporting the qualified immunity decision in Beers applies equally here.  Accordingly, the

district judge should dismiss Claim 3.

V.    Equal Protection (Claim 4)

Morales has alleged that the strip search violated his
Fourteenth Amendment right to equal protection because inmates
who left the holiday party early were not subjected to strip
searches.   "The Fourteenth Amendment's Equal Protection Clause
prohibits a state from treating similarly situated persons
differently because of their classification in a particular
group."  Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06
(1st Cir. 2015).

To establish an equal protection claim, a plaintiff needs
to allege facts showing that "'(1) the [plaintiff], compared
with others similarly situated, was selectively treated; and (2)
that such selective treatment was based on impermissible
considerations such as race, religion, intent to inhibit or
punish the exercise of constitutional rights, or malicious or
bad faith intent to injure'" the plaintiff.  Davis v. Coakley,
802 F.3d 128, 132-33 (1st Cir. 2015) (citations omitted).  To
meet the "'threshold requirement'" of differential treatment, a
plaintiff must "'identify and relate specific instances where
persons situated similarly in all relevant aspects were treated
differently,'" to show that he was "'singled out for unlawful
oppression.'"  Ayala-Sepúlveda v. Munic. of San Germán, 671 F.3d

18

24, 32 (1st Cir. 2012) (emphasis in original) (citation
omitted).  "In general, unless a suspect class is involved,
disparate treatment is presumed to be valid and will be
sustained if there is a rational relationship between the
disparity of treatment and some legitimate governmental
purpose."  King v. Rubenstein, 825 F.3d 206, 221 (4th Cir. 2016)
(internal quotation marks and citations omitted).

Morales has not pleaded any facts suggesting either that he
individually, or the group of inmates subjected to the group
strip search, were similarly situated to the inmates who left
early.  Furthermore, as inmates who stayed longer at the party
in contact with one another and with outside visitors could have
had additional opportunities for passing or receiving
contraband, Morales has not pleaded facts demonstrating a lack
of a rational basis for subjecting those who stayed longer to a
more intrusive search.  Accordingly, the district judge should
dismiss Claim 4.


VI.   Spoliation of Evidence (Claim 5)

Morales's allegations that defendants Jean Carrol and Colon
Forbes caused or failed to prevent the destruction of the
surveillance video are summarized here as Claim 5.  Construed
liberally, those allegations amount to a claim of intentional or
negligent spoliation of evidence.  Spoliation of evidence may

provide grounds for an adverse inference, a discovery sanction, or a tort claim in some cases, but Morales's allegations here do not implicate any violation of a federal right that could form the basis of a claim under 42 U.S.C. § 1983 in this case.  See Me. People's All. v. Holtrachem Mfg. Co., No. CV-00-69-B-W, 2009 U.S. Dist. LEXIS 53908, at *10 n.6, 2009 WL 1844990, at *3 n.6, (D. Me. June 25, 2009) (citing Mendez v. Vill. of Tinley Park, No. 07-C-6498, 2008 U.S. Dist. LEXIS 11033, at * 7, 2008 WL 427791 (N.D. Ill. Feb. 14, 2008) (spoliation of evidence is not a constitutional claim)).

A federal court may decline to exercise supplemental jurisdiction over state law claims that raise novel issues, and claims that involve issues that predominate over the matters remaining in the case over which the court has original jurisdiction.  See 28 U.S.C. § 1367(c).  New Hampshire law is unsettled as to whether spoliation of evidence is actionable. See Estate of Pardy, ex rel. Gobin v. Ala. Farmers Co-op, Inc., No. 09-cv-192-SM, 2010 DNH 115, 2010 U.S. Dist. LEXIS 72765, at *5-*6, 2010 WL 2836323, at *2 (D.N.H. July 19, 2010) ("New Hampshire Supreme Court has yet to recognize a common law tort claim for spoliation of evidence").  The claim's unsettled status in state law raises a novel issue that could predominate over the federal claims remaining in this case.  See 28 U.S.C. § 1367(c).  Accordingly, the district judge should dismiss Claim

5 without prejudice to plaintiff's ability to assert that claim
in a state court of competent jurisdiction.

VII. <u>Supervisory Defendants (Wrenn, Kench, Gerry, Foster)</u>

Morales names a number of supervisory officials as
defendants without asserting that they were directly responsible
for any conduct underlying Morales's claims.  Claims asserted
against a supervisor, in action brought under 42 U.S.C. § 1983,
may not be based on a theory of respondeat superior.  <u>See
Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir.
2014)</u>.  Instead, claims against prison supervisors must be based
on the supervisor's own acts or omissions constituting
"'supervisory encouragement, condonation or acquiescence[,] or
gross negligence of the supervisor amounting to deliberate
indifference.'"  <u>Grajales v. P.R. Ports Auth., 682 F.3d 40, 47
(1st Cir. 2012)</u> (citation omitted).

Morales appears to base the supervisory officials'
liability on the nature of their job responsibilities, which
include overseeing the conduct of the COs named as defendants
here.  Morales has not asserted any facts to demonstrate,
however, that defendants (former) Attorney General Joseph
Foster, (former) NHSP Warden Richard Gerry, (former) Department
of Corrections Commissioner William Wrenn, or the Commissioner's
representative Christopher Kench knew about, condoned, or were

deliberately indifferent to any unconstitutional conduct of their subordinates.  Accordingly, the complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 against any of those defendants.  The district judge should dismiss Morales's claims against them and drop Foster, Gerry, Wrenn, and Kench from this case.


VIII. Official Capacity Claims for Declaratory/Injunctive Relief

Morales seeks damages, injunctions, and declaratory relief on his claims.  "[A] plaintiff must demonstrate standing separately for each form of relief sought."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).  "'[A] continuing violation or the imminence of a future violation' is necessary to confer Article III standing to seek injunctive relief."  Conservation Law Found. v. Pub. Serv. Co. of N.H., No. 11-cv-353-JL, 2012 WL 4477669, at *10, 2012 U.S. Dist. LEXIS 138881, at *40, 2012 DNH 174 (D.N.H. Sept. 27, 2012) (citation omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).

"For declaratory relief to withstand a mootness challenge, the facts alleged must 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 53-54 (1st Cir. 2013)

22

(emphasis in original, citation omitted).  In general, "issuance
of a declaratory judgment deeming past conduct illegal is also
not permissible as it would be merely advisory."  Id. at 53.

Morales's claims arise out of his December 2014 attendance
at the NHSP Holiday event.  Attendance at each Holiday Event is
voluntary; inmates must apply if they wish to attend.  Morales
has not alleged that he is likely to attend such events in the
future, or that foregoing such events would subject him to any
harm.  Morales has therefore failed to allege facts to show that
he has standing to obtain injunctive relief, or that a
declaratory judgment could be properly issued.  Accordingly,
Morales's requests for injunctive and declaratory relief should
be denied, and his claims for such relief asserted against
defendants in their official capacities should be dismissed,
without prejudice to his ability to assert such claims should
circumstances warrant in the future.


## Conclusion

For the foregoing reasons, the district judge should
dismiss Claims 2(a), 2(b), 3, 4, and 5; dismiss all claims for
injunctive and declaratory relief, including those claims
asserted against any defendant in his or her official capacity;
and drop defendants Joseph Foster, William Wrenn, Christopher
Kench, Colon Forbes, Richard Gerry, Jean Carrol, Jon Fouts,

Roderick Greenwood, Keith Forcier, Kelly Jardine, and COs John

Doe 1, John Doe 3, and Jane Doe 1.  Any objections to this

Report and Recommendation must be filed within fourteen days of

receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The

fourteen day period may be extended upon motion.  Failure to

file objections within the specified time waives the right to

appeal the district court's order.  See Santos-Santos v. Torres-

Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


                              Andrea K. Johnstone
                              United States Magistrate Judge

January 3, 2019

cc:  Irvin Morales, pro se
     Francis Charles Fredericks, Esq.
     Lawrence Edelman, Esq.