Irvin Morales

       v.

CO John Doe #2, Jon Fouts,
Roderick Greenwood, and
Keith Forcier

Case No. 17-cv-234-SM
Opinion No. 2020 DNH 046

**ORDER**

     This case arises out of a December 2014 group strip search[1]
at the New Hampshire State prison ("NHSP").  The strip search
followed a holiday party attended by approximately one hundred
inmates and their families.  Morales, who attended the entire
party, alleges that about half of the inmates left early.  Those
who left early, Morales asserts, were subjected only to a pat-
down search while fully clothed.  Morales claims that the strip
search violated several of his constitutional rights.
Presently before the court in this prisoner civil rights case is
defendants' motion to dismiss (Doc. No. 52) plaintiff Irvin
Morales's Third Amended Complaint ("TAC"). (Doc No. 39).  See

---

[1]New Hampshire Department of Corrections Policy and
Procedure Directive 5.77, IV(a)(3) defines a strip search as
"removing all clothing from a person and searching the clothing
carefully, after which a detailed visual inspection of the
individual's naked body, including inside of the mouth, the
groin area and the buttocks shall be conducted."

Fed. R. Civ. P. 12(b)(6).  For the reasons that follow, the
defendants' motion is granted in part and denied in part.

## I.   **Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the court must "accept as true all well-pleaded facts
set out in the complaint and indulge all reasonable inferences
in favor of the pleader."  SEC v. Tambone, 597 F.3d 436, 441
(1st Cir. 2010).  Although the complaint need only contain "a
short and plain statement of the claim showing that the pleader
is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege
each of the essential elements of a viable cause of action and
"contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face," Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (citation and internal
punctuation omitted).

"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged," requiring the plaintiff to show "more than a sheer
possibility that a defendant has acted unlawfully."  Iqbal, 556
U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544,
556 (2007)).  A plaintiff must state facts in support of "each
material element necessary to sustain recovery under some

actionable legal theory." Campagna v. Mass. Dep't. of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003). But, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted). The court should "reject unsupported conclusions or interpretations of law." Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008). If, upon stripping out the "labels and conclusions," the allegations in the complaint, taken as true, fail to state a cognizable claim for relief, the motion to dismiss should be granted. See Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).

## II.  **Factual Background and Procedural History**

Plaintiff's TAC is the operative document before the court. To provide context for its consideration and the defendants' motion, the court first outlines the history of the case, before turning to the details of the TAC.

### A.  Original Complaint and Preliminary Review

In June 2017, plaintiff filed the instant lawsuit against, among other named individuals and John Does, Jon H. Fouts and Roderick R. Greenwood. See Complaint (Doc. No. 1) ("original complaint"). Defendant Sgt. Keith Forcier, a New Hampshire

State Prison ("NHSP") corrections officer ("CO"), was not named
in the original complaint.  The original complaint asserted that
following a holiday party in the NHSP gymnasium on December 18,
2014, a group strip search was conducted, without "any exigent
circumstances":

- in the open without the use of privacy screens[;]

- in direct view and proximity of the other
  inmates[;]

- in direct view of a female CO who was present in
  the gym[;]

- within the fixed view of a mounted video
  surveillance camera which exposed the inmates to
  voyeurism and to the consequent danger of sexual
  assault[;] and

- in such a manner as one would "treat . . . an
  animal."

Original complaint (Doc. No. 1) ¶¶ 13-20, 30-32, 34-38, 45, et
seq. (bullets added, internal punctuation omitted).  The
original complaint further alleged that defendants Fouts and
Greenwood authorized the search and that an unnamed CO ("John
Doe 2") performed it as to Mr. Morales.  Id. ¶¶ 30-32, 37.

Based on these allegations, Mr. Morales asserted violations
of the Fourth (unreasonable search and seizure) (Count 1),
Eighth (cruel and unusual punishment) (Count 2) and Fourteenth
(equal protection of the laws) (Count 3) Amendments.  Then,
following his signature and verification, Mr. Morales included a

"Table of Violations," in which he restated the Fourth, Eighth and Fourteenth Amendment claims and added the following: "Under the First Amendment it goes against my religion to have other people see my naked body." Id. at 18.

On March 27, 2018, the Magistrate Judge issued a Report and Recommendation ("March 2018 R&R") (Doc. No. 10),[2] stating, as to the original complaint's Fourth Amendment claims, that "[t]here [was] no principled basis for allowing Fourth Amendment claims to proceed here where the same claims, based on indistinguishable operative facts, were dismissed in [two other cases] on the grounds of qualified immunity." Id. at 4 (citing Beers v. Fouts, No. 15-cv-454-SM, 2018 WL 1221157 (D.N.H. Mar. 7, 2018) ("Beers"); Beers, 2017 WL 4048283 (D.N.H. June 12, 2017), R&R approved, 2017 WL 4041316 (D.N.H. Sept. 12, 2017); Baptiste v. Foster, No. 16-cv-439-JD, 2017 WL 2303975 (D.N.H. May 25, 2017)).[3]

---

[2]Mr. Morales moved to amend the complaint before the district judge had determined whether to approve or reject the March 2018 R&R's preliminary review of the original complaint, see May 29, 2018 Order. The court subsequently withdrew the March 2018 R&R and replaced it with the January 3, 2019 R&R (Doc. No. 30) ("January 2019 R&R") (subjecting second amended complaint's allegations and claims to preliminary review). See Jan. 3, 2019 Order (Doc. No. 30) (withdrawing and replacing March 2018 R&R with January 2019 R&R).

[3]The First Circuit Court of Appeals affirmed the dismissal of Beers. See Beers v. Sununu, No. 18-1392 (1st. Cir. Aug. 1, 2019). The plaintiff in Baptiste did not appeal.

Similarly tracking Beers and Baptiste, the Magistrate Judge recommended dismissal of the original complaint's Fourteenth Amendment equal protection claim after finding no allegations of dissimilar treatment to the plaintiffs in those cases.  March 2018 R&R (Doc. No. 10) at 7.  Also, as in Beers and Baptiste, the Magistrate Judge recommended dismissal of the original complaint's Eighth Amendment endangerment claim because Mr. Morales had failed to plead facts suggesting the "group strip search presented a substantial risk of serious harm."  March 2018 R&R (Doc. No. 10) at 5.  Addressing the Eighth Amendment humiliation claim in the original complaint, the Magistrate Judge recommended dismissal because plaintiff did not plead facts which suggested "that the group strip search was 'conducted in a harassing manner intended to humiliate and cause psychological pain.'"  Id. at 6 (quoting King v. McCarty, 781 F.3d 889, 897 (7th Cir. 2015)).  Ultimately, the Magistrate Judge recommended dismissal of all of the original complaint's claims except the First Amendment Free Exercise of Religion claim.

B.    First and Second Amended Complaints

On June 27, 2018, Mr. Morales filed his first amended complaint (Doc. No. 19), a handwritten document he replaced with a typewritten amended complaint on July 18, 2018 (Doc. No. 24).

Prior to the court acting on the amended complaint, Mr. Morales sought and was granted leave to file a second amended complaint. See Pl.'s Motion to Extend (Doc. No. 25) ¶ 5. Mr. Morales filed the second amended complaint on August 20, 2018 (Doc. No. 27). In addition to new factual allegations in the second amended complaint, Sgt. Forcier was named as a defendant for the first time. The second amended complaint alleged that Forcier, like defendants Fouts and Greenwood, authorized the strip search. See second amended complaint (Doc. # 27) ¶¶ 13, 22, 65.

The second amended complaint repeated the allegations set forth in Mr. Morales's initial complaint. In addition, Mr. Morales asserted that:

> Upon being called to be searched by John Doe 2, plaintiff Morales protested to John Doe 2 and advised him that strip searches in front of female officers and large groups of male prisoners as well as cameras would violate his Constitutional rights.
>
> [John] Doe 2 told plaintiff Morales that the more he protested the longer the search would take.
>
> Plaintiff Morales continued to protest and pleaded to be searched in private as at least two others had, in a bathroom only a few feet away as is protected by his first amendment right to free speech.
>
> [John] Doe 2 then threatened the plaintiff with a disciplinary report for failure to follow a direct order if he did not comply.
>
> [Morales] then obeyed the order as he was compelled to do in front of the female officers, cameras, other inmates present with no privacy or dignity.

> [Morales] was then subjected to a long, slow and
> humiliating search that left him naked in front of all
> the aforementioned persons for an excessive amount of
> time, subjecting him to unnecessary humiliation trauma
> and duress and forcing the plaintiff to repeat several
> embarrassing positions while naked.

Second amended complaint (Doc. No. 27) ¶¶ 33-38.

The Magistrate Judge subjected the second amended complaint to preliminary review under 28 U.S.C. § 1915A and LR 4.3(d) and then issued the January 3, 2019 R&R (Doc. No. 29) ("January 2019 R&R"), finding that the allegation of a "long, slow and humiliating search" by John Doe 2, performed in retaliation for Mr. Morales's allegedly protected speech – his verbal protest - survived preliminary review under the First, Fourth and Eighth Amendments only as to John Doe 2.  The January 2019 R&R recommended dismissal of the remaining defendants named in the second amended complaint because Mr. Morales failed to plead facts suggesting these officers were even aware of the manner in which John Doe 2 conducted the Morales strip search or that they intended to subject Mr. Morales to a search of that type. January 2019 R&R (Doc. No. 29) at 12, 15.  By Order dated February 1, 2019, the district judge approved the January 2019 R&R.  See Feb. 1, 2019 Order (Doc. No. 35).

C.    Third Amended Complaint ("TAC")

With leave of court, Mr. Morales subsequently filed the TAC "to remed[y] the perceived errors outlined by the Magistrate

8

Judge in [the January 2019] R&R . . . ."  Pl.'s Mot. For Leave

(Doc. No. 33) at 2.  In this, the operative complaint, Mr.

Morales has asserted that Fouts, Greenwood, and Forcier:

> were fully aware of [the] method and prolonged nature
> of the search [by John Doe 2] as they witnessed and
> were aware of the prolonged and repetitive nature of
> the search, but were deliberately indifferent to the
> violation of Morales' rights and the injury that it
> would cause Morales,

> and

> had the ability to intervene and stop the violation of
> his rights and injury.

TAC (Doc. No. 39) ¶¶ 38, 45 and 51.

The Magistrate Judge subjected the TAC to preliminary

review and then issued the June 17, 2019 R&R (Doc. No. 40)

("June 2019 R&R"), finding that the case should proceed against

John Doe 2, under the First, Fourth and Eighth Amendments, and

also against defendants Fouts, Greenwood and Forcier, "under

theories of bystander and supervisory liability," for "being

present at, and failing to intervene to stop, subordinate

officer CO John Doe 2's alleged unconstitutional acts . . .,

despite having an opportunity to do so."  June 17 R&R (Doc. No.

40) at 5-8.  The Magistrate Judge further recommended that the

TAC be dismissed as to all other parties.  Id. at 8-9.  By Order

(Doc. No. 43) dated July 10, 2019, the Court approved the June

2019 R&R.

D.   Claims Currently Before the Court

The end result of this procedural history is that the surviving claims against Defendants Fouts, Greenwood and Forcier, previously denominated as claims 6(a) through 6(c) [Bystander and Supervisory Liability], are as follows:

6.   Fouts, Greenwood, and Forcier are liable for CO John Doe 2's conduct in subjecting Morales to an excessively long, slow, and humiliating search, in that, while having supervisory authority over CO John Does 2, they witnessed the manner in which the search was conducted but failed to intervene to stop it, despite having the opportunity to do so:

a. In violation of Morales's Fourth Amendment right not to be subjected to an unreasonable search, lacking any legitimate purpose;

b. In violation of Morales's Eighth Amendment right not to be subjected to cruel and unusual punishment; and

c. In violation of Morales's right to avoid retaliation for engaging in conduct protected by the First Amendment.

June 2019 R&R (Doc. No. 40) at 4.  The instant motion to dismiss seeks dismissal of all claims against the defendants Greenwood, Forcier and Fouts, pursuant to Fed. R. Civ. P. 12(b)(6).

## III. **Analysis**

The defendants assert several arguments in support of their motion to dismiss.  First, they contend that Mr. Morales's claims are barred by the applicable three-year statute of limitations.  Next, the defendants argue that Mr. Morales failed

to exhaust his administrative remedies, as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). They further maintain that Mr. Morales's First Amendment claim should be dismissed because the speech at issue was not constitutionally protected.  Finally, the defendants argue that qualified immunity shields them from all of Mr. Morales's allegations.  The court addresses these arguments in turn.

A.    Statute of Limitations

The TAC presents claims under 42 U.S.C. § 1983, "which borrow[s] the statute of limitations applicable to personal injury actions under the law of the forum state."  As relevant here, N.H. Rev. Stat. Ann. ch. 508:4, I, bars suits brought more than "3 years of the act or omission complained of."  Federal law, however, governs the accrual of claims brought pursuant to section 1983.  A claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of the action. Smith v. NH State Prison, No. 05-CV-374-JD, 2006 WL 1425063, at *3 (D.N.H. Apr. 25, 2006) (citing Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997)).  Mr. Morales alleges in the TAC that he suffered "unnecessary humiliation, trauma and duress" contemporaneous with the December 18, 2014 strip search. TAC (Doc. # 39) ¶ 36.  He alleged in his initial complaint that he "went to sick call in January [2015] . . . to arrange with

mental health staff a scheduled time for treatment for the trauma [he] suffered as a result of the group strip search." Complaint (Doc. No. 1 ¶ 22). Based on these undisputed facts, it would appear at first blush that Mr. Morales's claims accrued on December 18, 2014 or, at the latest, in January 2015. But Mr. Morales's status as a prisoner adds another layer of inquiry.

In light of the exhaustion requirements of the PLRA, 42 U.S.C. § 1997e(a), "the statute of limitations which applies to [Mr. Morales'] civil rights action is tolled for the period during which his administrative remedies were being exhausted." Smith, 2006 WL 1425063, at *3 (citing Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000)). In his initial complaint, Mr. Morales discussed his use of the DOC-prescribed grievance procedure to exhaust his administrative remedies. Complaint (Doc. No. 1) ¶¶ 21-27. He either attached or referred to three grievances appealed to the highest level. Id. ¶¶ 19-26. The latest of these grievances was dated April 11, 2015, stamped RECEIVED by the DOC Commissioner's Office on April 13, 2015, and addressed by the Commissioner's designee on April 14, 2015. Id. at ¶ 24. The new claims in the TAC are barred by the statute of limitations unless they were filed on or before

April 14, 2018, three years after those claims were exhausted through an appeal to the Commissioner's office.

Mr. Morales seeks to extend that time period by arguing that his relevant grievances were not exhausted until significantly later – until April 2017 – due to some post-grievance communications with an inmate advocate and the New Hampshire Attorney General's office. Pl.'s Obj. (Doc. No. 54-1). That argument is unavailing. Those communications took place outside of the prison's grievance process and thus did not generate exhausted grievances within the NHDOC's system. To that extent, they do not toll the statute of limitations. See Smith, 2006 WL 1420563, at *3 (observing that tolling applies only pre-exhaustion).

### 1. Claims against Sgt. Forcier

As previously noted, Forcier was first named as a party on August 20, 2018, four months after the April 14, 2018 statute of limitations had run, when Mr. Morales filed his second amended complaint (Doc. No. 27). All claims against Forcier are therefore time-barred.

Mr. Morales seeks to avoid the impact of the statute of limitations on his claims against Sgt. Forcier by arguing that they relate back to the time he filed the original complaint. That argument is unavailing.

In pertinent part, Fed. R. Civ. P. 15(c)(1)(C) requires satisfaction of three criteria for an otherwise untimely pleading to "relate back":

> First, the claim asserted against the newly-designated defendant must satisfy the terms of Rule 15(c)(1)(B), which provides that the claim must arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out–in the original pleading."  Second, "within the period provided by [Federal Rule of Civil Procedure] 4(m) for serving the summons and complaint, the party to be brought in by amendment" must have "received such notice of the action that it will not be prejudiced in defending on the merits."  Fed. R. Civ. P. 15(c)(1)(C)(i).  Third, it must appear that within the same time frame the newly-designated defendant either "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).

Morel v. DaimlerChrysler AG, 565 F.3d 20, 26 (1st Cir. 2009) (internal case citation omitted).  Assuming that the first condition is met, in that the claim against Forcier arises "out of the conduct, transaction, or occurrence set out . . . in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), the TAC nevertheless fails to satisfy the second and third conditions. There is no suggestion: (a) that Forcier "received [any] notice of the action" before first having been named as a party on August 20, 2018, as required by Rule 15(c)(1)(C)(i); or (b) that the "'mistake proviso,'" in Rule 15(c)(1)(C)(ii), applies. See generally Cholopy v. City of Providence, 228 F.R.D. 412, 418 (D.R.I. 2005) (mistake proviso was designed to "'resolve

the problem of a misnamed defendant[s]' and allow a party 'to correct a formal defect such as misnomer or misidentification'" (citation omitted)).  Based on the foregoing, the claims against defendant Forcier are dismissed because they were not brought within the applicable statute of limitations and they do not relate back.

### 2.   Claims Against Maj. Fouts and Capt. Greenwood

Unlike Forcier, who appeared in the second amended complaint for the first time, defendants Fouts and Greenwood were named in the original complaint.  Fouts and Greenwood have argued in their motion to dismiss that the claims against them in the TAC vary so much from the original complaint that the newer allegations do not relate back.  Specifically, Fouts and Greenwood first note that the TAC only added them as witnesses to John Doe No. 2's long, slow, retaliatory strip search, of which they were both fully aware and in a position to stop, but to which they were deliberately indifferent.  These allegations, they argue, cannot relate back because the original complaint does not reference either a "long, slow" search, or these defendants' awareness of any verbal protest. Def. Mem. (Doc. No. 52-1) at 18.  Thus, they maintain that the TAC constitutes an alteration to the original complaint significant enough so that the latter could not have given

Fouts and Greenwood adequate notice of the claims against them.
Id. The court disagrees.

In the context of relating back under Fed. R. Civ. P. 15,
the First Circuit "has refused to allow an amendment to assert
a claim which was not even suggested in the original
complaint." Tessier v. United States, 269 F.2d 305, 308 (1st
Cir. 1959). For example, in O'Laughlin v. Nat'l R.R. Passenger
Corp., 928 F.2d 24 (1st Cir. 1991), a personal injury case, the
court affirmed the trial court's refusal to allow a subsequent
claim to relate back when the second claim was based on an
entirely different accident. Id. at 26. Similarly, this court
has observed that the relation back analysis "is directed to
conduct rather than causes of action, and new legal theories
may relate back to the original filing where . . . there is a
shared basis in factual circumstances." Frederick v. New
Hampshire, No. 14-CV-403-SM, 2016 WL 4382692, at *7 (D.N.H.
Aug. 16, 2016) (internal quotation marks and citation omitted).

Here, unlike in O'Laughlin – in which the newer claims were
based on discrete events at different times -- the claims
against Fouts and Greenwood arise out of the same strip search
that has been at the center of this litigation since its
inception. The original complaint named them as defendants,
albeit with different roles than alleged in the TAC. But "[a]s

long as conduct is placed in issue in the complaint, a proposed amendment applying a new legal theory to the identified conduct should ordinarily be permitted to relate back to the original complaint." Zee-Bar, Inc. v. Kaplan, 162 F.R.D. 422, 426 (D.N.H. 1993). So it is here. From the beginning of the case, Mr. Morales has asserted that defendants Fouts and Greenwood were involved, at least in a supervisory capacity, in the strip search at issue. Accordingly, as to those defendants, the TAC's new allegations relate back to the filing of the original complaint, and the claims against them that this court has allowed to proceed are not barred by the statute of limitations.

B.   PLRA Exhaustion

The defendants next argue that Mr. Morales's claims should be dismissed because he has failed to administratively exhaust them, as require by the PLRA. According to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Claims for which administrative remedies have not been exhausted are subject to

dismissal.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

"[T]he PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."  Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (citation omitted). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  Jones v. Bock, 549 U.S. 199, 218 (2007) (citation omitted).

A prisoner, however, is only required to exhaust those administrative remedies "available" to him or her.  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).  Ultimately, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

"[F]ailure to exhaust is an affirmative defense under the PLRA."  Jones, 549 U.S. at 216; see also Ramos v. Patnaude, 640 F.3d 485, 488 (1st Cir. 2011).  As such, it "must be raised and proved by the defense."  Cruz Berríos v. González-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones, 549 U.S. at 216).  To

prevail on an affirmative defense of failure to exhaust at the motion to dismiss stage of litigation, the defendant must show that "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)).

The defendants argue that while Mr. Morales seeks monetary damages in this court, his failure to specifically request money damages during his administrative grievance process requires the court to dismiss the TAC. They rely on New Hampshire Department of Corrections policy and procedure Directive 1.16, IV, which requires an inmate's grievance form to include, inter alia, "what relief or action is requested."

It is true, as defendants argue, that prisoners must exhaust their administrative remedies "even where the relief sought – monetary damages – cannot be granted by the administrative process." Booth, 532 U.S. at 734. A critical difference between Mr. Morales and the plaintiff in Booth, however, is that the latter filed no administrative grievance at all. This is an important distinction in light of the Booth Court's observation that "one 'exhausts' processes, not forms of relief." Id. at 739. More recently, in Ross, the

Court held that "the exhaustion requirement hinges on the 'availability' of the administrative remedies.  An inmate . . . need not exhaust unavailable remedies."  136 S. Ct. at 1858.  These cases stand for the proposition that a prisoner has to exhaust the remedies that are available, even if they are not the ones he wants.  On the current record, it appears that Mr. Morales did exactly that.  The defendants, citing no legal authority, rely on the converse argument, i.e., that Mr. Morales was required to raise the remedy he wanted, even if it was not available.  But Booth forecloses this argument.  "Exhaustion," the Court noted, "makes sense only in referring to the procedural means, not the particular relief ordered."  532 U.S. at 739.  "It would, for example, be very strange usage to say that a prisoner must . . . 'exhaust' his damages award before going to court for more. . . . Would he have to spend the money to "exhaust" the monetary relief given him?"  Id.  Finally, the Court noted that the PLRA's broad exhaustion requirement was meant to prevent prisoners from "skip[ping] the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms."  Id. at 741.  There is no argument here that Mr. Morales "skipped the administrative process."

At this stage of the litigation, and in the absence of contrary authority, the court cannot say that "the facts establishing the defense [are] clear on the face of the plaintiff's pleadings."  Trans-Spec Truck. Serv., Inc. 524 F.3d at 320 (internal quotation marks omitted).  Accordingly, defendants' motion to dismiss is denied to the extent it relies on PLRA exhaustion.

C.   First Amendment Retaliation

Mr. Morales's First Amendment claim stems from his verbal protests against the strip search.  He specifically asserts that "Morales protested to [John] Doe 2 and advised him that strip searches in front of female officers and large groups of male prisoners and cameras would violate his Constitutional rights." TAC (Doc. No. 39) ¶ 31.  Upon John Doe 2 advising Mr. Morales that his protest should cease, id. ¶ 32, Mr. Morales "continued to protest," id. ¶ 33, finally obeying only when "threatened . . . with a disciplinary report for failure to follow a direct order if he did not comply."  Id. ¶¶ 34-35.  Mr. Morales alleges that his protest was free speech protected by the First Amendment, id. ¶ 33, and that John Doe 2 conducted a "long, slow and humiliating search" in retaliation for the exercise of his First Amendment rights.

In order to state a First Amendment retaliation claim, a prisoner's complaint must assert facts "demonstrat[ing] that: (1) he engaged in an activity protected by the First Amendment; (2) [the prison official] took an adverse action against him; and (3) there is a causal link between the protected activity and the adverse action." Staples v. Gerry, 923 F.3d 7, 15 (1st Cir. 2019).

The defendants argue that Mr. Morales's claim fails at the first step – that his reaction to the strip search was not protected speech. They cite several cases that restate the proposition that insubordinate speech – as opposed to grievances and litigation – is not actionable. Defs.'s Mem. (Doc. No. 52-1) at 21-22 (citing Caffey v. Maue, 679 F. App'x 487, 490 (7th Cir. 2017) ("Insubordinate verbal remarks to prison staff are inconsistent with the status of a prisoner"); Kervin v. Barnes, 787 F.3d 833, 835 (7th Cir. 2015) ("backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected"); Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008) (insubordinate remarks that are "inconsistent with the inmate's status as a prisoner" are not protected); Johnson v. Carroll, No. 2:08-cv-1494 KJN P., 2012 WL 2069561, at *33-34 (E.D. Cal. June 7, 2012) (verbal statements made to corrections officers incident to strip search that were

"argumentative, confrontational [and] disrespectful," amounting
to "verbal insubordination . . . was "outside the protection of
the First Amendment"); Nunez v. Ramirez, No. 09cv413WQH(BLM),
2010 WL 1222058, at *4 (S.D. Cal. Mar. 24, 2010) (verbal protest
was not protected speech, because "[s]uch a direct, face-to-face
confrontation presents a danger of a disturbance and a
disruption to institutional order and discipline that a written
grievance does not").

At this stage of the litigation, the cases cited by the
defendants cannot support the weight defendants have attached to
them.  Some courts have found that certain verbal complaints can
be constitutionally protected if they involve "matters of public
concern" to all prisoners, rather than an "isolated request."
See, e.g., Pearson v. Welborn, 471 F.3d 732, 740-41 (7th Cir.
2006) (complaints about general use of shackles in group therapy
and denial of yard time).  Other cases have held that an "oral
grievance" can be constitutionally protected.  See, e.g., Maben
v. Thelen, 887 F.3d 252, 265 (6th Cir. 2018) (oral complaint to
cafeteria worker and supervisor about inadequate portions); Mack
v. Warden Loretto FCI, 839 F.3d 286, 299 (3d Cir. 2016) ("[The
prisoner's] oral grievance to [the prison officer] regarding the
anti-Muslim harassment he endured at work constitutes protected
activity under the First Amendment.")

The tone of the prisoner's complaint is also relevant.  In

Maben, for example, the court noted plaintiff's assertion that

he complained "politely and quietly."  887 F.3d at 264.  Here,

based on the cases they rely upon, the defendants implicitly

assert that Mr. Morales's complaints were "insubordinate,"

"backtalk," "argumentative," "confrontational," and

"disrespectful."  But those are judgments that the court cannot

make in deciding a motion to dismiss, as the facts alleged in

the TAC, construed in a light most favorable to the plaintiff,

do not warrant such findings.  Accordingly, defendants' Rule

12(b)(6) motion to dismiss Mr. Morales's First Amendment

retaliation claim (No. 6(c)) is denied.

####     D.   Qualified Immunity

"Qualified immunity shields government officials from civil

damages liability unless the official violated a statutory or

constitutional right that was clearly established at the time of

the challenged conduct."  Reichle v. Howards, 566 U.S. 658, 664

(2012) (emphasis supplied).  When qualified immunity is invoked,

the burden is on the plaintiff to show the inapplicability of

the defense.  See Rivera-Corraliza v. Puig-Morales, 794 F.3d

208, 215 (1st Cir. 2015).

In determining whether a defendant has qualified immunity

"[o]n the basis of the pleadings," the court "must decide (1)

whether the facts alleged or shown by the plaintiff make out a
violation of a constitutional right; and (2) if so, whether the
right was 'clearly established' at the time of the defendant's
alleged violation." Rocket Learning, Inc. v. Rivera-Sanchez,
715 F.3d 1, 8 (1st Cir. 2013) (citations and internal quotation
marks omitted). The "relevant, dispositive inquiry" in
determining whether a right is "clearly established" is "whether
it would be clear to a reasonable [officer] that his conduct was
unlawful in the situation he confronted." Id. at 9 (emphasis,
citations, and internal quotation marks omitted). To show that
the right was "clearly established," the plaintiff must point to
controlling authority or a consensus of cases of persuasive
authority that broadcasts a clear signal to a reasonable
official that certain conduct falls short of the constitutional
norm. McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017)
(internal quotation marks and citations omitted), cert. denied,
138 S. Ct. 1311 (2018).

"'[C]learly established law' should not be defined 'at a
high level of generality.' . . . [T]he clearly established law
must be 'particularized' to the facts of the case." White v.
Pauly, 137 S. Ct. 548, 552 (2017) (citation omitted). The
standard does not require a case on point but does require "a
case where an officer acting under similar circumstances" as the

defendant was "held to have violated" the pertinent federal right.  Id.

Defendants' argument in favor of qualified immunity has two parts.  First, they note that the court previously recommended a qualified immunity finding in favor of the officers with respect to each of Mr. Morales's previous complaints.  See March 2018 R&R (Doc. No 10); see also January 2019 R&R (Doc. No. 29). Next, they assert that the TAC makes essentially the same claims as the earlier complaints, so they are entitled to the same result.  Def. Mem. (Doc. No. 52-1) at 22.

Previously, Mr. Morales had alleged that the strip search was performed:

--in the open without the use of privacy screens;

--in direct view and proximity of the other inmates;

--in direct view of a female CO who was present in the gym;

--within the view of a mounted video surveillance camera, which exposed the inmates to "voyeurism" and to the consequent danger of sexual assault, and in such a manner as one would "treat . . . an animal,"

Complaint (Doc. No. 1) ¶¶ 13-20, 30-32, 34-38, 45, et seq.

After the court recommended dismissal of his Fourth Amendment claim based on qualified immunity, Mr. Morales added the following allegations in the TAC:

> [Morales] was then subjected to a long, slow and
> humiliating search that left him naked in front of all
> the aforementioned persons for an excessive amount
> of time, subjecting him to unnecessary humiliation,
> trauma and duress and forcing the plaintiff to repeat
> several embarrassing positions while naked.
>
> Defendants Fouts, Greenwood and Forcier . . .
> witnessed the search.

TAC (Doc. No. 54) ¶¶ 36, 38.

Defendants are correct that there is little to distinguish the new allegations for purposes of qualified immunity. But the court's prior qualified immunity findings were limited to plaintiff's Fourth Amendment claims, denoted as Claims 1(a) and 2(a). See March 2018 R&R (Doc. No 10) at 4; see also January 2019 R&R (Doc. No. 29) at 9-12. Accordingly, these defendants are entitled to qualified immunity with respect to Mr. Morales's Fourth Amendment claim, denoted as Claim 6(a).

But the defendants make no specific qualified immunity argument with respect to Claims 6(b) (Eighth Amendment) and 6(c) (First Amendment retaliation), as denoted in the June 2019 R&R (Doc. No. 40). Accordingly, the defendants' motion is denied with respect to those claims. See Casanova v. Hillsborough Cty. Dep't of Corr., No. 10-cv-485-JD, 2012 WL 3422326, at *4 (D.N.H. Aug. 14, 2012) (denying defendants' claim of immunity absent argument to support theory (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss (Doc. No. 52) is granted in part and otherwise denied, in that: (1) Claim 6(a) is dismissed, on the basis of the defendant officers' affirmative defense of qualified immunity; and (2) all claims against defendant NHSP Sgt. Keith Forcier are dismissed pursuant to the applicable statute of limitations, and Sgt. Forcier is dropped as a defendant.  In all other respects, the motion to dismiss (Doc. No. 52) is denied.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

March 24, 2020

cc:  Irvin Morales, pro se
     Anthony Galdieri, Esq.
     Lawrence Edelman, Esq.